**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ANA MOTA, a minor, by and through her parents and next friends, NANCY JIMENEZ-MOTA and RAFAEL MOTA,**<br>**Plaintiffs,**<br>**v.** | |
| **GRAND PRAIRIE INDEPENDENT SCHOOL DISTRICT; and GABRIEL A. TRUJILLO, in his official capacity as Superintendent of Schools of Grand Prairie Independent School District,**<br>**Defendants.** | **Civil Case No.** 3:26-cv-3752 |

**COMPLAINT**

Plaintiffs Ana Mota, a minor, by and through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota, complaining of Defendants Grand Prairie Independent School District and Gabriel A. Trujillo, allege and say:

**PARTIES**

1. Plaintiff Ana Mota is a seventeen-year-old female student enrolled as a senior at South Grand Prairie High School, a school within Grand Prairie Independent School District. She brings this action through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota, pursuant to Federal Rule of Civil Procedure 17(c).

2. Plaintiffs Nancy Jimenez-Mota and Rafael Mota are the parents of Ana Mota and bring this action as her next friends. They reside in Tarrant County, Texas.

3. Defendant Grand Prairie Independent School District ("GPISD") is a public independent school district operating South Grand Prairie High School and other public

schools in Texas. GPISD may be served through its Superintendent, Gabriel A. Trujillo, at 2602 S. Belt Line Road, Grand Prairie, Dallas County, Texas 75052.

4. Defendant Gabriel A. Trujillo is the Superintendent of Schools of GPISD and is sued in his official capacity. He may be served at 2602 S. Belt Line Road, Grand Prairie, Dallas County, Texas 75052. As Superintendent, Trujillo is GPISD's chief executive officer and exercises final administrative authority over district operations, programs, and activities. The GPISD Board of Trustees publicly supported Superintendent Trujillo's decision to remove Ana Mota from her cast role and to cancel the production.

5. GPISD receives federal financial assistance for its educational programs and activities.

**JURISDICTION AND VENUE**

6. This Court has original subject-matter jurisdiction because this action arises under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. 28 USCS § 1331.

7. This Court has jurisdiction to grant equitable and declaratory relief to secure civil rights.28 USCS § 1331.

8. This Court has personal jurisdiction over GPISD because GPISD is a Texas public school district that operates schools and conducts educational programs and activities within this judicial district.

9. This Court has personal jurisdiction over Superintendent Trujillo because he is a resident of Texas employed by GPISD and discharges his official duties within this judicial district.

10. Venue is proper in this District because GPISD resides in this District, Superintendent Trujillo discharges his official duties in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.28 USCS § 1391.

## FACTUAL ALLEGATIONS

### A. **Ana Mota, South Grand Prairie High School, and the Little Shop of Horrors Production**

11. Ana Mota is a seventeen-year-old female high-school senior at South Grand Prairie High School, an institution operated by GPISD. She is not transgender. Ana has participated in theater throughout her middle-school and high-school years, portraying both female and male roles.

12. During the week of September 28, 2026, GPISD's theater program conducted open auditions for South Grand Prairie High School's official production of *Little Shop of Horrors*. Ana auditioned with other students for parts in the musical.

13. On September 30, 2026, Ana was placed on the callback list to audition specifically for the role of Seymour. On October 1, 2026, GPISD theater educator Jordan Thomas determined that Ana was the best fit for the part of Seymour and selected her for that role.

14. Seymour is the lead character in *Little Shop of Horrors* — a male character. Ana intended to perform Seymour as a male character, as written in the script. The show's licensor, Music Theatre International, permits an actor of either sex to portray a character of the other sex provided the character remains as written.

15. Ana accepted the role and began rehearsing for the production.

16. On October 15, 2026, Ana Mota appeared before the GPISD Board of Trustees and stated: "I earned the role of Seymour in our school musical, *Little Shop of Horrors*. I had the same opportunity as everyone else and was ultimately decided to be the best fit for the role."

### B. **GPISD's Removal of Ana from the Role of Seymour**

17. Approximately one week after rehearsals began, district-level administrators — including Mr. Terrence Starling (School Principal), Lance Morse (Executive Fine Arts Director), and Dr. Suzy Meyer (Area Chief Secondary) — directed theater faculty member Jordan Thomas that Ana could not play Seymour because she is female and that she must be replaced by a male student.

18. On October 6, 2026, Mr. Thomas advised Nancy Jimenez-Mota about a meeting with district level administration: "They raised some concern regarding Senate Bill 12 about our casting of Ana in the role of Seymour. And ultimately, where we have landed is that we have to remove her from that role."

19. GPISD offered Ana a shared role as Audrey, a female character in the play.

20. Ana declined that reassignment because she had not auditioned for or been selected to play Audrey, she did not wish to displace another student, and she wished to preserve the casting decision reached through the audition process.

21. GPISD then canceled the entire production of *Little Shop of Horrors*.

22. On or about October 13, 2026, GPISD issued and distributed a public statement to local Dallas-Fort Worth media stating:

> "Recently, a casting decision was made to place a female student in the role of a male character in the school musical. In the musical, a romantic relationship develops between the two main characters. When District leadership learned of this issue and in consideration of themes in the musical involving an abusive relationship, a decision was made to pull that production and find something more appropriate. This decision was made in light of the District's ongoing effort to ensure its programs remain consistent with Senate Bill 12 and all applicable law."

23. On October 15, 2026, at a Regular Meeting of the GPISD Board of Trustees, Board President Emily Liles stated: "Recently, district leadership and this board learned of an issue related to the casting and production of the musical, Little Shop of Horrors at South Grand Prairie High School. At that time, the superintendent advised us that the performance of this play would not comply with requirements of Senate Bill 12 that was enacted in 2025."

24. Board President Liles further stated: We, as a Board, support the decision made by our Superintendent. She further noted that students were "preparing for a new musical, *Frozen*."

25. GPISD's stated basis for removing Ana from the role of Seymour was (a) that Ana is female, (b) that a female student was portraying a male character who develops a romantic relationship with a female character, and (c) GPISD's asserted concern about and effort to comply with the 2025 version of Texas Senate Bill 12.

26. Nancy Jimenez-Mota made multiple requests in writing to GPISD asking for an explanation of what provision of SB 12 would be violated if Ana played the role of Seymour, and whether any written district policy stated such limitations. GPISD never responded to those requests.

27. Ana spoke at the October 15, 2026, GPISD Board meeting and stated: "The district was afraid they were teetering the line of the law, stated in SB 12, and decided to take extreme caution, removing me from the role. In turn, they violated Title IX. I was excluded from participation in an education program receiving federal financial assistance because I am a female."

28. Ana remains ready and willing to resume rehearsals and perform the role of Seymour.

C. **Texas Senate Bill 12 (2025) and Its Inapplicability to Theatrical Cross-Casting**

29. Texas Senate Bill 12, 89th Legislature, Regular Session (2025) ("SB 12"), was signed by Governor Abbott on June 20, 2025, and took effect September 1, 2025. It amends the Texas Education Code through four provisions principally challenged in related federal litigation: the Club Provision (§ 33.0815), the DEI Provision (§ 11.005), the Social Transition Provision (§ 11.401), and the LGBT Curriculum Provision (§ 28.0043).

30. The Social Transition Provision, § 11.401, prohibits school employees from assisting a student with "social transitioning," which the statute defines as a person's transition from the person's biological sex at birth to the opposite biological sex through the adoption of a different name, different pronouns, or other expressions of gender that deny or encourage a denial of the person's biological sex at birth. Ana Mota is not transgender and was not engaged in any personal gender transition. She was portraying a scripted fictional character in an official school theatrical production — a centuries-old theatrical tradition.

31. The LGBT Curriculum Provision, § 28.0043, restricts instruction, guidance, activities, or programming regarding sexual orientation or gender identity. Ana's casting as Seymour did not constitute instruction, guidance, or programming regarding sexual orientation or gender identity. The role of Seymour is a male fictional character whose scripted attributes were to remain unchanged.

32. The DEI Provision, § 11.005, restricts diversity, equity, and inclusion duties, defined to include developing or implementing policies, procedures, trainings, activities, or programs that reference race, color, ethnicity, gender identity, or sexual orientation. An official school theatrical production cast according to the school director's artistic judgment does not on its face fall within this definition.

33. None of the four substantive provisions of SB 12 contains an express prohibition on cross-sex casting in theatrical productions. SB 12 contains no text that can reasonably be read to require an actor's biological sex to match the sex of a fictional scripted character.

34. Section 28.0043 itself contains a statutory savings clause providing that it may not be construed to limit a student's ability to engage in speech or expressive conduct protected by the First Amendment. Theatrical performance is core expressive conduct protected by the First Amendment. Using SB 12 to remove a student from a theatrical role based solely on her sex violates this savings clause.

35. Section 1.009 of SB 12 protects the fundamental rights of parents to make decisions concerning their child's education unless the district demonstrates a compelling state interest achieved through the least restrictive means. Ana's parents, Nancy Jimenez-Mota and Rafael Mota, actively supported Ana's participation in the role of Seymour. GPISD's removal of Ana from that role contravenes SB 12's own parental rights mandate as it applies to non-transgender theatrical casting.

36. GPISD's application of SB 12 to Ana's theatrical casting was a non-textual and overbroad interpretation of the statute, extending well beyond what SB 12 actually prohibits.

D. **The Eskridge Opinion: Analogies and Distinctions**

37. In *GSA Network v. Morath*, No. 4:25-cv-04090 (S.D. Tex.), Judge Charles Eskridge entered an order denying Katy ISD's motion to dismiss and granting a preliminary injunction as unopposed against Houston, Katy, and Plano ISDs with respect to their policies implementing SB 12's Club, DEI, Social Transition, and LGBT Curriculum Provisions.

38. Judge Eskridge held that a school district's reliance on SB 12 to implement policies that inflict constitutional deprivations does not shield the district from liability under 42 U.S.C. § 1983. His analysis applies with equal force here: GPISD implemented its own interpretation of SB 12 in a manner that imposed a sex-based exclusion on Ana Mota, and it may not escape liability by attributing that local decision to mandatory state law.

39. Judge Eskridge further held that under Texas Education Code § 11.151(b), local school boards exercise the exclusive authority to oversee their schools, and SB 12 delegates enforcement directly to local school boards rather than to the TEA Commissioner. Because GPISD's Board of Trustees ratified the removal of Ana and the cancellation of the production, GPISD's own final policymaker is responsible for the constitutional and statutory violation at issue here.

40. Judge Eskridge dismissed the TEA Commissioner for lack of a sufficient enforcement nexus, observing that injuries traceable to ISD policies cannot be attributed to the Commissioner. This case is analogous: Plaintiff brings this action against GPISD and its Superintendent, who exercised actual decision-making authority, rather than against the Commissioner.

41. Judge Eskridge emphasized that the Supremacy Clause obligates school boards to comply with federal law first, even when doing so requires disregarding contrary state directives. GPISD was required to comply with Title IX — a federal antidiscrimination law — regardless of its reading of SB 12.

42. This case is distinguishable from *GSA Network v. Morath* in one critical respect: the *GSA Network* plaintiffs challenged SB 12 on First Amendment and Equal Access Act grounds as applied to identifiably LGBTQ+-related student organizations, speech, and social transitioning. Here, the claim is under Title IX, and the plaintiff is a non-transgender female student who was denied participation in an educational program solely because her biological sex did not match the sex of a fictional character. SB 12 contains no express provision prohibiting a non-transgender female from portraying a male theatrical role. GPISD's application of SB 12 to Ana's situation was an unauthorized local overreach unsupported by the statute's text.

43. Because the *GSA Network* preliminary injunction extended only to Houston, Katy, and Plano ISDs and the TEA Commissioner was dismissed, GPISD is not protected by that injunction and faces independent federal exposure for its own local enforcement decisions.

E. **Harm to Ana Mota**

44. Ana was denied participation in and the benefits of GPISD's educational theater program — including rehearsals, the lead performance role, and the full range of educational benefits associated with the role of Seymour in a senior-year theatrical production — because she is female.

45. The originally anticipated performance dates for *Little Shop of Horrors* were December 10 through December 12, 2026. Ana is expected to graduate on approximately June 1, 2027. Once her senior-year rehearsal and performance window closes, no award of money can fully restore this particular role, production, or educational experience.

46. GPISD's cancellation of the production and substitution of *Frozen* in its place did not cure the sex-based exclusion; it denied the entire cast of *Little Shop of Horrors*, and Ana in particular, the opportunity to perform the production they had been cast in.

47. GPISD's cancellation of the production after Ana declined the sex-restricted substitute role offer of a shared Audrey constitutes retaliatory conduct and further evidence of sex-based discrimination.

48. Ana's injury is immediate, ongoing, and irreparable. Every day without relief reduces the rehearsal time available to restore the production before Ana's graduation.

**COUNT I — TITLE IX SEX DISCRIMINATION**

49. Plaintiffs incorporate by reference paragraphs 1 through 48.

50. Title IX provides that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.20 USCS § 1681.

51. Consistent with that mandate, federal regulations provide that, except as otherwise specified, no person shall on the basis of sex be excluded from participation in, denied the benefits of, or subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient that receives federal financial assistance.34 CFR 106.31 (2026).

52. GPISD is a recipient of federal financial assistance.20 USCS § 1681. GPISD operates South Grand Prairie High School's theater program, which is an educational program or activity within the meaning of Title IX.

53. Ana Mota is a person protected by Title IX.

54. GPISD intentionally excluded Ana from the role of Seymour and denied her the benefits of participation in the GPISD educational theater program because she is female. The administrators who removed Ana from the role stated explicitly that the basis for removal was that Ana is a female student portraying a male character.

55. GPISD's offer to allow Ana to perform only as a female character — and specifically as a shared female role she had not auditioned for and had not been selected to perform — further demonstrates that GPISD's decision was based on Ana's sex and on a sex-specific restriction on the character she could portray.

56. The production's licensor permits cross-sex casting provided the character remains as written. Ana intended to perform Seymour as a male character throughout. GPISD's

prohibition was therefore not required by any legitimate artistic necessity or licensing constraint; it was imposed solely because of Ana's sex.

57. GPISD's cancellation of the production did not cure its sex-based exclusion of Ana. Ana remained excluded from the role for which she was selected, GPISD offered no equivalent educational opportunity, and the cast was transitioned to a different production.

58. GPISD's conduct — removing Ana from the role for which she was selected on the basis of her sex, offering her only a sex-restricted alternative role, and canceling the production when she declined — constitutes intentional sex discrimination in violation of Title IX.

59. GPISD's conduct violated Title IX.20 USCS § 1681.

60. Federal law provides that legal and equitable remedies are available for violations of Title IX to the same extent as against a public or private entity.20 USCS § 1682.

**COUNT II — TITLE IX RETALIATION**

61. Plaintiffs incorporate by reference paragraphs 1 through 60.

62. Title IX's prohibition of sex discrimination encompasses retaliation against individuals who oppose sex discrimination in a federally funded educational program.20 USCS § 1681.

63. Ana Mota and her mother, Nancy Jimenez-Mota, opposed GPISD's sex-based removal of Ana from the role of Seymour. Ana declined GPISD's offer of a sex-restricted substitute role, and Nancy Jimenez-Mota made multiple written requests for an explanation of the basis for GPISD's decision.

64. GPISD canceled the entire production of *Little Shop of Horrors* after Ana declined the sex-restricted reassignment to a shared Audrey role. GPISD did not cancel the production for independent, legitimate reasons unrelated to Ana's opposition to the sex-based exclusion; the cancellation followed directly upon her refusal to accept the substitute female role.

65. GPISD's cancellation of the production as a consequence of Ana's opposition to the sex-based removal constitutes retaliation on the basis of sex in violation of Title IX.20 USCS § 1681.

**COUNT III — SUPREMACY CLAUSE / DECLARATORY RELIEF**

66. Plaintiffs incorporate by reference paragraphs 1 through 65.

67. The Supremacy Clause of the United States Constitution provides that federal law is the supreme Law of the Land, binding upon every State notwithstanding any contrary state provision.

68. Title IX prohibits GPISD, as a recipient of federal financial assistance, from excluding Ana from participation in or denying her the benefits of an educational program on the basis of sex.20 USCS § 1681.

69. GPISD invoked and applied the 2025 version of Texas SB 12 as the basis for removing Ana from the role of Seymour and canceling the production.

70. As applied by GPISD to Ana's casting and participation in the school production, SB 12 conflicts with Title IX because GPISD used the state law as a basis to impose a sex-based exclusion in a federally funded educational program. Where a state law is used to accomplish what federal law forbids, the state law must yield.20 USCS § 1681.

71. GPISD may not rely on state law, local policy, or administrative interpretation to excuse conduct that Title IX independently prohibits.

72. A declaration that GPISD's application of SB 12 to exclude Ana from the role of Seymour is preempted by Title IX and violates the Supremacy Clause will resolve the present controversy and prevent continuing injury to Ana.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

A. Declare that GPISD violated Title IX by excluding Ana Mota from participation in, denying her the benefits of, and subjecting her to discrimination in GPISD's educational theater program because of her sex;

B. Declare that GPISD's application of SB 12 (2025) to prevent Ana Mota from performing the role of Seymour or otherwise participating in the production of *Little Shop of Horrors* conflicts with and is preempted by Title IX under the Supremacy Clause;

C. Issue a temporary restraining order, preliminary injunction, and permanent injunction (i) prohibiting GPISD and its officers, agents, employees, and persons acting in active concert with them from enforcing against Ana any sex-based restriction on her participation in the role of Seymour; (ii) requiring GPISD to restore the production of *Little Shop of Horrors* and permit Ana to resume the role of Seymour under nondiscriminatory conditions; and (iii) prohibiting GPISD from replacing Ana in that role on the basis of her sex;

D. Issue a preliminary and permanent injunction prohibiting GPISD from applying SB 12, district policy, board standards, or other asserted authority in a manner that excludes Ana from participation in the theater program because of her sex;

E. Award compensatory damages in an amount to be proved at trial and permitted by law;

F. Award Plaintiffs their costs and attorney's fees where authorized by law;

G. Award allowable pre- and post-judgment interest; and

H. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 26, 2026.

Respectfully submitted,

*Jonathan Winocour*
Texas Bar No. 24037730
jwinocour@winocourlaw.com

WINOCOUR LAW
1511 East Levee Street, Suite B
Dallas, Texas, 75207
T: 214 575 6060
F: 214 575 6220

*Counsel for Plaintiffs Ana Mota, a minor, by and through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota*