**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ANA MOTA, a minor, by and through her parents and next friends, NANCY JIMENEZ-MOTA and RAFAEL MOTA,**<br>**Plaintiffs,**<br>**v.**<br><br>**GRAND PRAIRIE INDEPENDENT SCHOOL DISTRICT; and GABRIEL A. TRUJILLO, in his official capacity as Superintendent of Schools of Grand Prairie Independent School District,**<br>**Defendants.** | **Civil Case No.** 3:26-cv-03752 |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Ana Mota, a minor appearing through her parents and next friends Nancy Jimenez-Mota and Rafael Mota, moves under Federal Rule of Civil Procedure 65 for a temporary restraining order ("TRO") and preliminary injunction against Defendants Grand Prairie Independent School District ("GPISD") and Gabriel A. Trujillo, in his official capacity as Superintendent of Schools. Plaintiff asks the Court to prohibit GPISD and Superintendent Trujillo from enforcing a sex-based restriction that prevents Ana from playing the role of Seymour in South Grand Prairie High School's production of *Little Shop of Horrors* and to require Defendants to restore the production and permit Ana to resume rehearsals in that role, subject to the same lawful and nondiscriminatory requirements applicable to other student participants.

Plaintiff requests an expedited hearing. In support, Plaintiff relies on the Complaint, the Declaration of Nancy Jimenez-Mota attached hereto with its supporting exhibits, and any evidence and argument presented at the hearing.

## **I.** INTRODUCTION

Ana Mota is a seventeen-year-old senior at South Grand Prairie High School who is not transgender. After an open audition, GPISD's theater educator selected her to play Seymour — the lead character in *Little Shop of Horrors* — because she was the best fit for the role. The show's licensor permits an actor of either sex to portray a character of the other sex, provided the character remains as written. Ana intended to perform Seymour as a male character throughout.

Approximately one week after rehearsals began, GPISD administrators directed theater faculty to remove Ana from the role because she is female and to replace her with a male student. GPISD offered Ana a shared role as Audrey, a female character. When Ana declined, GPISD canceled the production. GPISD publicly attributed its decision to concerns about Texas Senate Bill 12 (2025). At its October 15, 2026 Board meeting, the Board confirmed it was relying on the 2025 version of SB 12.

Title IX provides that no person may, on the basis of sex, be excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity receiving federal financial assistance. 20 USCS § 1681. GPISD receives federal financial assistance, and its educational theater program is the program from which Ana was excluded. GPISD's removal of a non-transgender female student from an earned lead theatrical role — because she is female — is textbook sex discrimination under Title IX, and SB 12 (2025) provides no textual defense for that act.

The injury is immediate. *Little Shop of Horrors* was scheduled for December 10 through December 12, 2026, and meaningful rehearsals must resume on an accelerated schedule to preserve the production. Every missed rehearsal irreversibly narrows the

available preparation window. Once Ana's senior-year performance opportunity closes, no monetary award can restore this particular role, production, or educational experience.

## **II.** STATEMENT OF FACTS

Ana has participated in theater throughout middle school and high school, portraying both female and male roles. During the week of September 28, 2026, Ana auditioned for South Grand Prairie High School's production of *Little Shop of Horrors*. On September 30, 2026, she was placed on the callback list; on October 1, 2026, theater director Jordan Thomas determined she was the best fit for the role of Seymour and selected her. Ana accepted the role and began rehearsing.

Approximately one week into rehearsals, district administrators — including Terrence Starling (Principal), Lance Morse (Executive Fine Arts Director), and Dr. Suzy Meyer (Area Chief Secondary) — directed Mr. Thomas to remove Ana from Seymour because she is female and to assign a male student instead. In a voicemail to Nancy Jimenez-Mota, school personnel stated that district administrators had raised concerns about Senate Bill 12 and concluded that Ana had to be removed and reassigned to share the female role of Audrey.

Ana declined the reassignment. She had not auditioned for Audrey, had not been selected for it, and did not wish to displace another student. GPISD then canceled *Little Shop of Horrors*.

GPISD stated publicly that its decision concerned "a female student" playing "a male character" with a romantic relationship with a female character, the production's themes, and the District's ongoing effort to ensure its programs remain consistent with Senate Bill 12 and all applicable law. At the October 15, 2026 Board meeting, Board President Emily Liles confirmed the Board's reliance on Senate Bill 12 that was enacted in 2025 and expressed the Board's support for Superintendent Trujillo's decision. Students are now preparing the musical *Frozen* instead.

Nancy Jimenez-Mota made multiple written requests to GPISD for an explanation of which provision of SB 12 would be violated by Ana playing the role of Seymour; GPISD never responded.

Ana remains ready and willing to resume rehearsals immediately.

## **III.** LEGAL STANDARD

A temporary restraining order and a preliminary injunction are governed by Federal Rule of Civil Procedure 65. To obtain preliminary relief, Plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that she will suffer irreparable injury absent relief; (3) that the threatened injury outweighs the harm the requested injunction would cause Defendants; and (4) that the injunction will not disserve the public interest. *Xiongen Jiao v. Ningbo Xu*, 28 F.4th 591, 598 (5th Cir. 2022); *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

The Supreme Court states the same requirements as likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of equities favoring the movant, and consistency with the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary equitable remedy, and Plaintiff therefore must make a clear showing on each element. *Id.* at 22. Irreparable injury must be likely in the absence of relief, not merely possible. *Id.* at 22, 24.

The purpose of preliminary relief is to preserve the parties' relative positions until the Court can adjudicate the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Here, the last peaceable, uncontested position before the challenged decision was an approved production in rehearsal with Ana cast as Seymour. The requested order would restore that position while preventing the approaching performance calendar and Ana's senior-year graduation from extinguishing effective relief.

Plaintiff does not seek an *ex parte* order. Rule 65(b)(1)'s additional requirements for relief without notice therefore are not implicated. Defendants are being served with this Motion, and Plaintiff requests an expedited opportunity for both sides to be heard.

## **IV.** ARGUMENT

### ***A. Plaintiff Is Substantially Likely to Succeed on Her Title IX Claim.***

1. **The Governing Standard.**

Title IX provides that no person shall, on the basis of sex, be excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity receiving federal financial assistance. 20 USCS § 1681. Federal regulation implementing Title IX extends this prohibition to any academic, extracurricular, or other education program or activity of a recipient. 34 CFR 106.31 (2026). GPISD receives federal financial assistance, and its educational theater program is covered.

2. **The Evidence of Intentional Sex-Based Exclusion Is Direct and Compelling.**

GPISD selected Ana through an open audition because the theater director judged her the best fit for Seymour. District administrators then ordered Ana removed from that role and replaced by a male student, and they told her and her mother explicitly that the basis was that she is female. GPISD then offered Ana only a female role she had never auditioned for. Its public statements identified the central issue as "a female student" playing "a male character". This is not a case of inference or circumstantial evidence. The stated reason for Ana's removal was her sex — a textbook Title IX violation.

This case is stronger than a case involving circumstantial inference of sex discrimination. GPISD administrators did not claim the theater director's casting choice was educationally unsound, that Ana lacked vocal or dramatic ability, or that the licensing agreement prohibited her casting. They said she had to be removed because she is female.

3. **Neither SB 12 (2025) Nor Any Legitimate Artistic Necessity Justifies the Exclusion.**

a. *SB 12 Does Not Require Sex-Matched Theatrical Casting.*

SB 12's four substantive provisions — the Club Provision (§ 33.0815), the DEI Provision (§ 11.005), the Social Transition Provision (§ 11.401), and the LGBT Curriculum Provision (§ 28.0043) — contain no text requiring actors in an official school production to match the biological sex of the fictional character they portray.

The Social Transition Provision prohibits employees from assisting a student with "social transitioning," which the statute defines as a personal gender transition through adoption of a different name, pronouns, or other expressions denying one's biological sex at birth. Ana is not transgender and was not engaged in a personal gender transition. She was performing a scripted theatrical character — a practice with roots in ancient Greek and Renaissance theater. An actor performing a scripted role is not undergoing a personal social transition within any reasonable reading of § 11.401.

The LGBT Curriculum Provision restricts instruction, guidance, activities, or programming regarding sexual orientation or gender identity. Ana's casting as Seymour did not constitute instruction, guidance, or programming regarding sexual orientation or gender identity. Seymour is a scripted male character whose sex, name, pronouns, and dramatic attributes were to remain entirely unchanged. A female actor performing a male scripted role engages in cross-sex casting — a theatrical tradition that predates modern concepts of gender identity by more than two millennia. That tradition is simply not what § 28.0043 addresses.

The DEI Provision, § 11.005, restricts policies, procedures, trainings, activities, or programs that reference race, color, ethnicity, gender identity, or sexual orientation. An official school theatrical production selected and cast through a faculty-directed audition process, in which the actor portrays a scripted character whose sex remains fixed throughout, does not on its face constitute a policy, procedure, training, activity, or program that references gender identity or sexual orientation.

The Club Provision, § 33.0815, restricts student clubs based on sexual orientation or gender identity. A faculty-supervised musical production is not a student club, and this production was not based on sexual orientation or gender identity. § 33.0815 has no application to the facts of this case.

b. *SB 12's Internal Savings Clauses Confirm That GPISD's Reading Is Untenable.*

The LGBT Curriculum Provision, § 28.0043, contains an express savings clause stating that it may not be construed to limit a student's ability to engage in speech or expressive conduct protected by the First Amendment. Theatrical performance in an official school production is core expressive conduct. Removing Ana from a theatrical role based solely on her sex to avoid what GPISD characterized as a violation of § 28.0043 is directly contrary to the statute's own internal First Amendment protection.

Section 1.009 of SB 12 further protects the fundamental rights of parents to make decisions concerning their child's education unless the district demonstrates a compelling state interest achieved through the least restrictive means. Nancy Jimenez-Mota and Rafael Mota fully supported Ana's participation as Seymour. GPISD's removal of Ana from the role on the basis of her sex overrode their parental decision without any demonstrated compelling state interest.

c. *The Distinction from GSA Network v. Morath* [1] *Is Controlling on This Point.*

In *GSA Network v. Morath*, the challenged SB 12 provisions were applied to LGBTQ+-identified student organizations, social transitioning by transgender students, and speech expressly referencing sexual orientation and gender identity. The statute's text — prohibiting clubs based on sexual orientation or gender identity and instruction regarding sexual orientation or gender identity — had at least colorable application to those facts.

Here, by contrast, no transgender student is involved, no personal social transition is at issue, and no instruction regarding sexual orientation or gender identity was being provided. Ana is a non-transgender female student performing a scripted male character in a traditional theatrical production, with the character's sex preserved throughout. GPISD's extension of SB 12 to this setting is a non-textual overreach that the statute's own text does not support. The absence of any textual basis for GPISD's reading further underscores that

[1] *GSA Network v. Morath*, 821 F. Supp. 3d 753 (S.D. Tex. 2026).

the operative cause of Ana's exclusion was her sex, not a legally required state-law compliance measure.

4. **GPISD Cannot Invoke Curricular Discretion to Escape Title IX.**

GPISD may assert that it exercised legitimate editorial control over a school-sponsored production. But curricular discretion is not a license to impose sex-based exclusions in violation of federal antidiscrimination law. Whatever authority a school possesses over program content and production selection, that authority does not authorize the school to remove a student from an educational activity because of her sex after she has been selected through the school's own merit-based process.

The critical fact here is not a content decision about the show or its script. GPISD did not claim the production was educationally inappropriate, that the script was objectionable, or that Ana lacked the skill to perform the role. District administrators told Ana and her mother directly that she had to be removed because she is female and replaced by a male student. That is a sex-based personnel decision — an exclusion of a person from an educational program because of her sex — not a legitimate content or curricular judgment. Furthermore, the show's licensor, Music Theatre International, expressly permits cross-sex casting, provided the character's scripted sex remains intact. Ana intended to perform Seymour as a male character throughout. There was no artistic or licensing necessity for Ana's removal, and GPISD identified none. The curricular-discretion defense has no force when the district's own stated reason is sex — precisely what Title IX prohibits.

5. **The Board's Ratification Confirms Institutional Liability.**

As Judge Eskridge held in *GSA Network v. Morath*, SB 12 places enforcement authority in the hands of local school boards, which exercise independent policymaking authority over their schools under Texas Education Code § 11.151(b). GPISD's Board of Trustees did not merely ratify the Superintendent's recommendation in passing — the Board President publicly stated at the October 15, 2026, Regular Meeting that the Board had been advised the production would not comply with SB 12 (2025) and that [w]e, as a Board, support the

decision made by our Superintendent. The Board is GPISD's final policymaker. Its affirmative endorsement of the removal and cancellation makes this an institutional decision for which GPISD bears direct responsibility.

***B. GPISD's Anticipated SB 12 Compliance Defense Fails.***

GPISD has publicly and repeatedly invoked SB 12 (2025) as the legal basis for removing Ana and canceling the production. GPISD therefore is likely to argue that state law compelled its decision, that avoiding possible state-law consequences is a legitimate justification, and that canceling the production was a content-based curricular decision rather than discrimination against Ana. None of those arguments defeats Plaintiff's likelihood of success.

1. **SB 12 Does Not Require Sex-Matched Theatrical Casting.**

A compliance defense begins with what SB 12 actually requires. None of the four provisions on which GPISD could rely expressly regulates theatrical casting, prohibits a female student from portraying a male fictional character, or requires the actor's sex to match the character's sex. The Club Provision concerns student clubs; *Little Shop of Horrors* was a faculty-supervised theatrical production, not a club based on sexual orientation or gender identity. The DEI Provision concerns specified duties, policies, trainings, activities, and programs referencing protected subjects; it does not create a sex-matching rule for dramatic roles, and its definition contains an exception for measures necessary to comply with federal antidiscrimination law. GPISD cannot transform statutory silence into an affirmative command to exclude Ana because she is female.

2. **Portraying Seymour Is Neither Social Transitioning Nor Programming Regarding Gender Identity.**

Section 11.401 defines social transitioning as a person's transition from the person's biological sex at birth to the opposite biological sex through a different name, pronouns, or other expressions denying or encouraging denial of that person's biological sex. Ana is not transgender, did not ask GPISD to recognize her as male, and did not seek a different

personal name or pronouns; she sought to portray Seymour as a male fictional character exactly as written. Treating dramatic performance as the actor's personal social transition disregards the statutory definition.

Section 28.0043 likewise does not justify the exclusion. Although it addresses instruction, guidance, activities, or programming regarding sexual orientation or gender identity, the record shows only a conventional casting decision in which a female actor would portray an unchanged male character. The role's name, pronouns, sex, and scripted relationship would remain as written. Ordinary cross-casting does not become instruction regarding gender identity merely because the actor and fictional character are of different sexes. And § 28.0043 expressly provides that it may not be construed to limit a student's protected speech or expressive conduct that does not materially disrupt school activities. GPISD has identified no disruption caused by Ana's casting.

3. **A General Duty to Implement SB 12 Does Not Compel GPISD's Particular Interpretation.**

GPISD may emphasize that SB 12 directs school districts to implement and enforce its requirements. But a general implementation duty does not answer whether Ana's casting falls within any substantive prohibition. The Southern District of Texas has explained that SB 12 leaves pertinent implementation and enforcement authority with local boards and that the Texas Education Agency may not substitute its judgment for the lawful exercise of trustees' powers under Texas Education Code § 11.151(b). GPISD's Board did not identify a state-issued casting rule; it adopted and publicly supported the Superintendent's own conclusion that this production would not comply. The challenged exclusion is therefore GPISD's decision, not a ministerial act dictated by statutory text.

4. **State-Law Compliance Cannot Excuse a Proven Violation of Title IX.**

Title IX independently prohibits a federally funded school district from excluding a student from an education program or activity on the basis of sex. 20 USCS § 1681. If GPISD's reading of SB 12 required the District to remove Ana because she is female, that

application would conflict with Title IX's federal command. Under the Supremacy Clause, GPISD must follow federal law when a contrary state directive cannot be reconciled with it. *GSA Network v. Morath* is persuasive on that allocation of responsibility, although its injunction is not binding on GPISD and was entered as unopposed against the three school-district defendants. The court rejected Katy ISD's contention that policies implementing SB 12 were attributable only to the State, reasoning that districts retain independent authority and that every implementation decision carries the district's obligation to comply with the Constitution and federal law. The court further explained that school districts must comply first with federal law even when that requires disregarding a contrary state directive. Its injunction was limited to Houston, Katy, and Plano ISDs because enforcement was decentralized; challenges to another district's actions require district-specific litigation such as this case.

That reasoning applies here without extending the prior injunction or its merits disposition beyond its proper scope. Unlike *GSA Network*, this case does not ask the Court to decide whether SB 12 facially violates the First Amendment or the Equal Access Act. It asks whether GPISD may invoke SB 12 to impose a sex-based exclusion that the statute's text does not require and Title IX forbids. GPISD cannot avoid federal responsibility by labeling its own expansive interpretation "compliance."

5. **Cancellation and Post Hoc Curricular Rationales Do Not Cure the Completed Sex-Based Exclusion.**

GPISD may argue that it ultimately canceled the production for everyone because of the musical's themes and thus treated all students alike. But the cancellation occurred only after administrators removed Ana from Seymour because she is female, directed that a male student replace her, and offered Ana a female role instead. Eliminating the production did not erase the completed discriminatory casting decision or restore the educational opportunity Ana lost.

Nor can a generalized appeal to curricular discretion defeat direct evidence of sex-based treatment. GPISD remained free to make lawful decisions about scripts, scheduling, and pedagogy, but Title IX did not permit it to condition Ana's participation on accepting a female character or to remove her from an earned role because of her sex. GPISD's later reference to the production's themes does not explain why administrators specifically required a male actor for Seymour, particularly where the licensor permitted cross-casting and the character would remain male as written. On this record, SB 12 compliance is neither a textual mandate nor a lawful defense to GPISD's sex-based exclusion.

***C. Plaintiff Will Suffer Irreparable Harm Absent Immediate Relief.***

The harm to Ana is concrete, immediate, and incapable of being fully remedied by an award of money. *Little Shop of Horrors* was scheduled for December 10 through December 12, 2026. Rehearsals were to begin October 1 and must resume on an accelerated schedule if the production is to proceed. As of the date of this filing, October 26, 2026, rehearsal time has already been lost and continues to be lost with each passing day.

Ana is a senior who is expected to graduate on approximately June 1, 2027. Once her senior year closes, this particular role, this production, and this moment in her educational career cannot be recreated. No sum of money can restore a seventeen-year-old's opportunity to perform the lead role in her senior-year school musical. The injury is the kind that courts have consistently recognized as irreparable — the loss of a unique, time-limited educational experience that money cannot replace.

The ongoing harm is also cumulative. Every week without relief further compresses the rehearsal window, reduces the educational benefit of any restoration, and increases the risk that the performances cannot be staged before Ana's graduation. Delay is not neutral; it progressively destroys the remedy.

### *D. The Balance of Equities Favors Immediate Relief.*

Without relief, Ana permanently loses the lead role she earned through her school's own merit-based audition process, the rehearsal experience associated with it, and the performances scheduled for December 2026. That loss is total and irreversible.

The burden on GPISD is proportionate and manageable. The requested relief is narrow: restore the production that GPISD had already approved and for which rehearsals had already begun; permit Ana to resume the role its own theater director had awarded her; and apply only nondiscriminatory participation requirements. The Court is not asked to rewrite the script, alter the character, or supervise the production's artistic choices. It is asked to prohibit GPISD from applying a sex-based restriction that its own statute does not require and that Title IX independently forbids.

The equities weigh substantially in Ana's favor. She was selected through the school's own process, the licensor approves cross-sex casting, the director supported her casting, and the only reason given for her removal was her sex. GPISD created the emergency by removing her from a role already underway; it cannot now argue that it would be burdened by resuming the status quo it disrupted.

### *E. The Requested Injunction Will Not Disserve the Public Interest.*

Federal law prohibits sex discrimination in federally funded educational programs. 20 USCS § 1681. An injunction enforcing that prohibition against a federal funding recipient enforces federal anti-discrimination law and vindicates the public interest in equal access to educational opportunity.

The public interest is further served by restoring a school production that the director selected, the cast rehearsed, and the school community had organized to perform. Canceling the production punished not just Ana but the entire cast of students who had invested time and effort based on the school's own casting decisions.

GPISD does not have a cognizable public interest in enforcing a reading of SB 12 that the statute's text does not support and that conflicts with federal antidiscrimination law. The

requested injunction does not require GPISD to violate any lawful state mandate; it requires only that GPISD comply with Title IX.

***F. The Requested Relief Is Specific and Properly Limited.***

Plaintiff requests that the Court enter an order, pending further order of the Court:

1. Prohibiting GPISD, Superintendent Trujillo, and their officers, agents, employees, attorneys, and persons acting in active concert or participation with them from enforcing against Ana Mota any restriction that prevents her from rehearsing or performing the role of Seymour because she is female;
2. Requiring GPISD to restore its production of *Little Shop of Horrors* and promptly resume rehearsals or, if the original December 10 through December 12, 2026 performance dates are no longer feasible, establishing the earliest feasible replacement performance dates that preserve Ana's opportunity to perform before the second week of January 2027;
3. Requiring GPISD to permit Ana Mota to resume the role of Seymour, subject only to lawful and nondiscriminatory requirements applied equally to all participating students;
4. Prohibiting GPISD and Superintendent Trujillo from replacing Ana in the role of Seymour on the basis of her sex; and
5. Preserving the foregoing relief until the Court rules on Plaintiff's request for a preliminary injunction or enters a further order.

## **V.** CONCLUSION

Ana Mota earned the lead role in her senior-year school musical through a merit-based audition process conducted by her school's own theater faculty. She was removed from that role for one reason and one reason only: she is female. That is textbook sex discrimination under Title IX. SB 12 (2025) provides no textual basis for what GPISD did; the statute's own savings clauses confirm that GPISD's reading was overbroad; and federal

law independently prohibits the exclusion GPISD imposed. The injury is immediate and irreversible. Plaintiff respectfully requests that the Court grant the requested temporary restraining order and set an expedited hearing on the preliminary injunction.

Dated: October 26, 2026.

Respectfully submitted,


*Jonathan Winocour*
Texas Bar No. 24037730
jwinocour@winocourlaw.com

WINOCOUR LAW
1511 East Levee Street, Suite B
Dallas, Texas, 75207
T: 214 575 6060
F: 214 575 6220

*Counsel for Plaintiffs Ana Mota, a minor, by and through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota*

**CERTIFICATE OF CONFERENCE AND NOTICE**

I hereby certify that on October 26, 2026, at approximately 3:00 pm, I forwarded the foregoing Motion, the Complaint, the Proposed Order, and the Motion for Expedited Hearing, via email to Dr. Melissa Kates, General Counsel for GP ISD at melissa.kates@gpisd.org.

Accordingly, GP ISD's General Counsel has been advised of the specific legal claims and the immediate injunctive relief sought by Plaintiff.

I asked Ms. Kates to contact me urgently so I could ascertain whether GP ISD and Superintendent Trujillo:

> Oppose the relief requested in this Motion and intend to appear and contest the application at any hearing scheduled by the Court.
>
> Oppose the relief requested but require additional time to retain counsel/review the documents before providing available dates for an expedited hearing.

As of the time of filing, I have received no response. Accordingly, I hereby certify that an agreement could not be reached, and this Motion is presented to the Court as a contested matter requiring an expedited hearing.

*Jonathan Winocour*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ANA MOTA, a minor, by and through her parent and next friend, NANCY JIMENEZ,**<br>**Plaintiff,**<br><br>**v.**<br><br>**GRAND PRAIRIE INDEPENDENT SCHOOL DISTRICT,**<br>**Defendant.** | **Case No. ___________________** |

**DECLARATION OF NANCY JIMENEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Nancy Jimenez, declare as follows:

1. My name is Nancy Jimenez. I am over eighteen years of age, competent to make this declaration, and have personal knowledge of the matters stated here.
2. I am Ana Mota's mother and next friend. Ana is a minor.
3. Ana is a senior at South Grand Prairie High School, which is operated by Grand Prairie Independent School District.
4. Ana has participated in [multiple roles since 7th grade and all years of high school. She has represented females and male roles indiscriminately, as she has been casted to fit different parts according to her skills and ability to represent such roles.
5. During the week of September 28 through October 1, 2026, Ana auditioned with all of the students to be part of the musical. On September 30, she was on the call back list to audition for the part of Seymour the next day, October 1, 2026. It was determined by her theater director that Ana was the best fit for

the part of Seymour., Ana auditioned for South Grand Prairie High School's production of *Little Shop of Horrors*.

6. GPISD selected Ana to play Seymour, the production's lead character and a role traditionally played by a male actor.

7. Ana accepted the role and began rehearsing for the production.

8. Approximately one week after rehearsals began, Mr. Terrence Starling, School Principal; Lance Morse, Executive Fine Arts Director; and Dr. Suzy Meyer, Area Chief – Secondary, informed Mr. Jordan Thomas that Ana could not play Seymour because she is female and that she needed to be replaced by a male student.

9. GPISD offered Ana a shared role as Audrey, a female character.

10. Ana declined that reassignment because she understood she was not originally selected for that role and she did not want to compound the injustice of her being denied a role by displacing another student from a role they had been cast in. She also did not want to affect the integrity of the play understanding her director's choice had a reasoning behind it that includes fitting the appropriate performer with a role.

11. GPISD subsequently canceled the production.

12. Before the cancellation, performances were scheduled for December 10-12, 2026, with rehearsals scheduled for October 1 – December 9, 2026.

13. Ana's expected graduation date is June 1, 2027.

14. Based on the existing performance schedule, rehearsals must resume very soon for the production to proceed as planned, or the performance dates must be rescheduled before the second week of January 2027.

15. Ana worked to earn the role of Seymour through the audition process. She lost the opportunity to rehearse and perform that role when GPISD removed her and canceled the production.

16. The role would provide Ana the opportunity to develop and demonstrate theatrical skills, work with the cast and faculty, and participate in a significant senior-year school activity.

17. Each missed rehearsal reduces the time available for Ana and the other cast members to prepare for the production.

18. If the production is not promptly restored, Ana will lose the opportunity to perform Seymour before she graduates.

19. A future payment of money cannot give Ana back the rehearsals, performances, collaboration with the cast, or senior-year experience she will lose.

20. Postponing the opportunity until a later school year is not possible because Ana is a senior.

21. Once the available rehearsal and performance period passes, the opportunity to restore Ana to this particular role and production will be permanently lost.

22. Attached as Exhibit 1 is a true and correct copy of the case list issued after the auditions identifying Ana in the lead role.

23. Attached as Exhibit 2 is a true and correct copy of a transcribed voicemail message left on my telephone by Mr. Jordan Thomas concerning decisions relayed to him during a meeting with district level administration on October 6, 2026.

24. Ana remains ready and willing to resume rehearsals and perform the role of Seymour if the Court grants relief.

25. I respectfully request immediate relief so that Ana does not permanently lose this educational opportunity before the Court can decide her claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2026, in Dallas, Texas.

NANCY JIMENEZ

Parent and Next Friend of Ana Mota

EXHIBIT 1

# Little Shop of Horrors Cast List

First Rehearsal: Tomorrow, October 1 @ 3:10 in the Auditorium

**Seymour:** Ana Mota
**Audrey:** Criselle Zamarripa
**Mushnik:** JaQuaylon Mcnett
**Oran:** Ahmad Hamad
**Audrey II:** Hailey Garcia
**Crystal:** Layla Ablorh
**Ronnette:** Sofia Ortega
**Chiffon:** Hayleigh Hoover
**Mr. Bernstein:** Agustin Aguilar
**Mrs. Luce:** Mollie Brentham
**Skip Snip:** Jonas Butler
**Patrick Martin:** Tehillah Tshingamb
**Skid Row Occupants (Ensemble):** Scarlett Young, Elise Alba, Miyah Carter, Abigail Buentello, Jhaleon Winnfield, Sophia Liscano, Audrey Carpenter, Joanna Osuma

EXHIBIT
2

6:34

+1 (817) 988-8524 ›

Add Contact

Report Spam

10-6-26

Transcript

Mason Cress from South Grand Prairie High School, Anna's choir teacher. Calling about musical. Hello, uh, Ms. Moto, this is Mr. Thomas here at South Grand Prairie High School. Uh, we just wanted to talk to you about, um, the, uh, outcome of a meeting that we just had with some of our district level administration. Um, they raised some concern regarding Senate Bill 12 about our casting uh, of Anna in the role of Seymour. And ultimately, where we have landed is that we have to remove her from that role. And instead, what we're going to do is double cast the leading role of Audrey, and she will be the 2nd performer taking on that role, and her role of Seymour will be filled by another performer. We wanted to call and let you know about this before we informed Anna just so we were all on the same page. If you have any questions, any concerns, please feel free to reach out to us. Again, I'm Mr. Thomas, and you can reach me at 469-387-4267. Have a great day.

Favorites Recents Contacts Keypad Voicemail