**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MOTA, et al.**<br>**Plaintiffs,**<br>**v.**<br><br>**GP ISD, et al.**<br>**Defendants.** | **Civil Case No. 3:26-cv-03752-M** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs A.M., a minor, by and through her parents and next friends Nancy Jimenez-Mota and Rafael Mota, file this First Amended Complaint against Defendants Grand Prairie Independent School District ("GPISD" or "District") and Gabriel A. Trujillo, in his official capacity as Superintendent of Schools of GPISD ("Superintendent Trujillo"), and allege as follows:

### Reservation of Rights Regarding Pending Extraordinary Relief

This Amended Complaint supersedes the Original Complaint. Plaintiffs expressly incorporate by reference and preserve, and do not waive or withdraw, their pending application for a temporary restraining order and preliminary injunction filed in this action. The amended allegations do not render that application moot, do not modify the relief requested therein, and are not intended to and do not preclude this Court from ruling on the pending application on the existing record. Plaintiffs reserve all rights to seek immediate and permanent injunctive relief, declaratory relief, and damages on the claims set forth herein.

### I. PARTIES

1. Plaintiff A.M. is a minor and a senior at South Grand Prairie High School ("SGPHS"), a school within GPISD, located in Grand Prairie, Texas. She brings this action by and through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota.

2. Defendant Grand Prairie Independent School District is a public school district organized under the laws of the State of Texas. GPISD is a recipient of federal financial assistance within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and operates educational programs and activities, including an extracurricular theater program at SGPHS.

3. Defendant Gabriel A. Trujillo is the Superintendent of Schools of GPISD and is sued in his official capacity. Official-capacity claims against Superintendent Trujillo are coextensive with the claims against GPISD. Plaintiffs retain Superintendent Trujillo as a named defendant to the extent any prospective-relief obligation may require his participation in implementation.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in the Northern District of Texas, Dallas Division, because Defendants are located within this district and all relevant events occurred within this district.

## III. FACTUAL ALLEGATIONS

### *A.* GPISD's Theater Program and Federal Funding

6. GPISD operates a school theater program at SGPHS as part of its educational program or activity. The theater program is an extracurricular educational activity that provides students with educational, artistic, and leadership benefits, including rehearsal experience, performance, collaborative skill development, and artistic training in a principal role.

7. GPISD receives federal financial assistance and is therefore a covered educational institution subject to Title IX, 20 U.S.C. § 1681(a).

### *B.* The Little Shop of Horrors Casting and A.M.'s Selection as Seymour

8. In late September 2026, GPISD conducted open auditions for the SGPHS musical *Little Shop of Horrors*.

9. On or about October 1, 2026, A.M. was selected through those open auditions and cast in the role of Seymour, the male leading character in *Little Shop of Horrors*.

10. Seymour is the male lead in *Little Shop of Horrors*. A.M. did not seek to change Seymour's scripted identity, did not seek to present herself as transgender, and did not propose to alter the character's sex in the production.

11. A.M. accepted the role and began rehearsals on October 1, 2026.

*C.* The District's Sex-Based Removal of A.M. from Seymour

12. On or about October 5 and 6, 2026, District administrators raised concerns premised on Senate Bill 12 (2025), Tex. Educ. Code § 28.0043 ("SB 12"), regarding A.M., a female student, performing the male character of Seymour opposite a female student in the role of Audrey.

13. On or about October 6, 2026, District administrators informed A.M., the student cast as Audrey, and the student cast as the dentist that A.M. would be double-cast in the female role of Audrey, and the male student who had also been considered in the final callback for the role of Seymour was then assigned the Seymour role.

14. The District's decision to remove A.M. from Seymour and assign that role to a male student was based on A.M.'s sex. The District did not remove any male student from a role because of his sex. The District's stated concern was that a female student performing a male character opposite a female student playing a romantic lead ran afoul of SB 12.

15. The District did not identify a provision of SB 12 that required A.M.'s removal from Seymour, and A.M.'s mother asked the District to identify the relevant SB 12 provision and any district policy imposing the restriction.

16. A.M. objected to the reassignment and declined to accept the shared role of Audrey. She had not auditioned for Audrey and did not wish to displace the student already cast in that role.

17. The benefit denied to A.M. — the opportunity to rehearse and perform as Seymour, the male lead for which she auditioned and was selected — is a role-specific educational opportunity distinct from participation in the theater program generally. The offer of a female role

to a female student, after removing her from the male role for which she was selected because of her sex, did not restore the denied benefit.

*D.* Cancellation of **Little Shop of Horrors** and the Decision to Produce **Frozen**

18. On October 8, 2026, GPISD made the decision to cancel the production of *Little Shop of Horrors* entirely.

19. On October 15, 2026, GPISD's Board of Trustees publicly announced the cancellation of *Little Shop of Horrors* and identified *Frozen* as the replacement production.

20. At the October 15, 2026 Board meeting, A.M. publicly stated that her removal from the role of Seymour violated Title IX.

21. The cancellation of *Little Shop of Horrors* was directly connected to and followed from the District's sex-based removal of A.M. from the role of Seymour and the unresolved casting dispute that resulted therefrom. The removal of A.M. from Seymour because she is female, and the subsequent cancellation of the production after she declined the sex-restricted substitute role, constitute related acts of sex-based discrimination.

22. On October 15 and 16, 2026, the District offered A.M. the lead role of Anna in *Frozen*. A.M.'s acceptance of a role in Frozen does not cure the District's sex-based exclusion of A.M. from the role of Seymour, does not constitute an equivalent educational benefit or opportunity, and does not waive or satisfy her Title IX claims. The substituted role was selected and offered by the District; A.M. did not receive the particular opportunity — to rehearse and perform the male lead in a production for which she had auditioned and been selected — that was withdrawn because of her sex.

*E.* Protected Opposition and Retaliatory Conduct

23. Prior to the cancellation of *Little Shop of Horrors* on October 8, 2026, A.M., through her mother, engaged in protected activity by opposing the sex-based restriction and requesting that the District identify the SB 12 provision and any district policy supporting the removal. That request communicated opposition to sex-based exclusion and was adverse to the District's position.

24. A.M. further engaged in protected activity by declining to accept the reassignment to a sex-restricted substitute role and by communicating her objection to the basis of the District's decision.

25. The cancellation of *Little Shop of Horrors* followed directly from the District's inability to resolve the casting dispute that arose from its sex-based removal of A.M. from Seymour and from A.M.'s protected opposition to that removal. The cancellation was an adverse action — it eliminated not only A.M.'s opportunity to perform as Seymour but the entire production in which she had been cast.

26. Following A.M.'s public Title IX objection at the October 15, 2026 Board meeting, the District took no remedial action, did not reinstate A.M.'s access to the opportunity denied on the basis of her sex, and proceeded with the replacement production that did not restore the role-specific benefit A.M. had been denied.

27. The sequence of events — including the removal of A.M. from Seymour because she is female, the offer of a sex-restricted substitute role, A.M.'s protected opposition to the sex-based restriction, and the cancellation of the production — supports a plausible inference of intentional sex-based exclusion and retaliatory conduct.

***F.*** The Enforcement Context

28. At the time of the Board meeting, State Representative Jeff Leach had formally requested that the Texas Attorney General open an investigation into organizations assisting Texans in circumventing SB 12. The District has acknowledged that this enforcement environment forms part of the context in which it evaluated risks associated with the production of *Little Shop of Horrors* with A.M. playing the part of Seymour.

29. GPISD has acknowledged that federal law controls and does not contend that SB 12 excuses any violation of Title IX.

## IV. CLAIMS FOR RELIEF

### COUNT I — TITLE IX SEX DISCRIMINATION *20 U.S.C. § 1681(a)*

30. Plaintiffs incorporate all preceding paragraphs.

31. Title IX provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a).

32. GPISD is a recipient of federal financial assistance. Its extracurricular theater program, including the SGPHS musical productions, constitutes an education program or activity within the meaning of Title IX.

33. GPISD intentionally removed A.M. from the role of Seymour because she is female. The District assigned Seymour to a male student and offered A.M. a sex-restricted female role. These decisions were made on the basis of A.M.'s sex.

34. The District denied A.M. the role-specific educational benefit of rehearsing and performing as Seymour — the role for which she auditioned, was selected, and had already begun rehearsals — because she is female.

35. The District's subsequent cancellation of *Little Shop of Horrors* and transition of the cast to a different production did not cure the antecedent sex-based removal of A.M. from Seymour. The substituted production did not offer A.M. the equivalent of the specific educational opportunity that was withdrawn because of her sex.

36. The District's intentional sex-based removal of A.M. from Seymour constitutes intentional sex discrimination in violation of Title IX. As a direct and proximate result, A.M. has suffered and continues to suffer the loss of the role-specific educational benefit described herein, as well as associated harms.

37. Plaintiffs seek compensatory damages, injunctive relief restoring A.M. to the role of Seymour (or in the alternative, appropriate equitable relief), declaratory relief, and all other relief to which they are entitled.

**COUNT II — TITLE IX RETALIATION** *20 U.S.C. § 1681(a); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005)*

38. Plaintiffs incorporate all preceding paragraphs.

39. Title IX prohibits a funding recipient from retaliating against an individual because that individual has complained of sex discrimination. Such retaliation constitutes intentional discrimination on the basis of sex.

40. A.M., through herself and her mother, engaged in protected activity by opposing the District's sex-based removal of her from Seymour, by requesting identification of the legal basis for the restriction, and by declining to accept the sex-restricted substitute role. Those communications stepped outside mere compliance and made clear opposition to what A.M. and her mother reasonably believed was unlawful sex-based exclusion.

41. The adverse actions following A.M.'s protected opposition include: (a) the cancellation of the entire production of *Little Shop of Horrors*, which eliminated the opportunity A.M. sought to restore; and (b) the District's failure, following A.M.'s public Title IX objection at the October 15, 2026 Board meeting, to reinstate access to the denied benefit or take any remedial action.

42. The sequence of events supports a plausible causal connection between A.M.'s protected opposition and the adverse actions: the cancellation followed directly from the unresolved dispute created by the District's sex-based removal and A.M.'s refusal to accept the sex-restricted reassignment; and the absence of any remedial action following the October 15 public objection is itself consistent with intentional indifference to and continuation of the challenged conduct.

43. As a direct and proximate result of the District's retaliatory conduct, A.M. has suffered and continues to suffer the losses described herein. Plaintiffs seek compensatory damages, injunctive relief, declaratory relief, and all other relief to which they are entitled.

**COUNT III — DECLARATORY RELIEF** *20 U.S.C. § 1681(a); 28 U.S.C. § 2201*

44. Plaintiffs incorporate all preceding paragraphs.

45. An actual, justiciable controversy exists between the parties concerning whether Title IX prohibited GPISD from removing A.M. from the role of Seymour solely because she is female.

46. The District invoked SB 12 as the stated basis for its sex-based casting decision. The District has acknowledged that federal law controls and does not contend that SB 12 excuses a Title IX violation. The Court's resolution of whether the District's decision violated Title IX necessarily addresses whether SB 12 provides a legally cognizable justification for a sex-based exclusion from an educational benefit.

47. Plaintiffs request that this Court declare: (a) that Title IX, 20 U.S.C. § 1681(a), prohibits GPISD from removing a student from an educational theater role for which she was selected through open audition solely because of her sex; and (b) that the District's reliance on SB 12 to justify that removal does not excuse the Title IX violation.

48. This request for declaratory relief is not an independent cause of action under the Supremacy Clause. It is a request for a declaration of the parties' rights under Title IX, authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, and ancillary to Count I.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Enter a declaration that GPISD violated Title IX by removing A.M. from the role of Seymour because of her sex;

2. Enter preliminary and permanent injunctive relief remedying the District's sex-based exclusion of A.M. from the role of Seymour, including, as appropriate, prohibiting the use of sex-based casting restrictions, requiring an expedited sworn assessment of the feasibility of restoring *Little Shop of Horrors* with A.M. eligible to perform as Seymour, and conducting such further proceedings as may be necessary to fashion effective and minimally disruptive equitable relief; or, alternatively, grant such other appropriate equitable relief as will remedy the discriminatory exclusion alleged herein;

3. Award compensatory damages in an amount to be determined by the trier of fact;

4. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable law; and

5. Grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2026.

Respectfully submitted,

_Jonathan Winocour_
Texas Bar No. 24037730
jwinocour@winocourlaw.com

WINOCOUR LAW
1511 East Levee Street, Suite B
Dallas, Texas, 75207
T: 214 575 6060
F: 214 575 6220
*Counsel for Plaintiffs A.M., a minor, by and through her parents and next friends, Nancy Jimenez-Mota and Rafael Mota*

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2026, a true and correct copy of the foregoing First Amended Complaint was served on counsel for Defendants via the Court's CM/ECF electronic filing system, which provides electronic notice to all counsel of record.

_Jonathan Winocour_